FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 09 2018 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
DENISE SCIDMORE,

               Plaintiff,          COMPLAINT AND JURY DEMAND

    -against-                 Docket No.: **CV18 1486**

SYSCO LONG ISLAND, LLC, SYSCO    Trial By Jury is Hereby Demanded
CORPORATION, MATTEW GOFFFREDO,
Individually, FRANK RECINE, Individually,
and MARILYN JAMES, Individually.        FEUERSTEIN, J.
                                                              TOMLINSON, M.J.

              Defendants.
------------------------------------------------------x

       Plaintiff, DENISE SCIDMORE, by and through her attorney, Paul L. Dashefsky, as and for her Complaint against the Defendants, SYSCO LONG ISLAND, LLC (hereinafter, "Sysco LI"), SYSCO CORPORATION (hereinafter, "Sysco"), MATTHEW GOFFREDO, FRANK RECINE, and MARILYN JAMES alleges as follows:

       1.     This is a civil action for damages brought pursuant to pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC Sections 2000e, et seq. (hereinafter "Title VII"), 29 U.S.C. 206(d) (hereinafter the "Equal Pay Act"), and pursuant to Section 296 of the New York Executive Law (hereinafter "New York Human Rights Law") and section 194 of the New York Labor Law. Jurisdiction is founded upon 29 U.S.C. Section 626 and 28 U.S.C. Sections 1331, 1337, and 1343, and for claims under New York State law pursuant to the doctrine of Supplemental Jurisdiction, 28 U.S.C. Section 1367. Plaintiff demands trial by jury.

       2.     The unlawful employment practices alleged herein were committed throughout the Eastern District of New York.

3. The Plaintiff seasonably filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). After months of investigation, the EEOC issued a Notice of Right to Sue, which the Plaintiff received on or about December 15, 2017. Therefore, this action is filed within the ninety-day period following the receipt of the Notice of Right to Sue.

## PARTIES

4. The Plaintiff resides at 9 Sunhill Road, Nesconet, County of Suffolk, New York.

5. Upon information and belief, the Defendant, Sysco LI, is a limited liability company existing and created under the laws of the State of New York, having a principal office for the transaction of business located at 199 Lowell Avenue, Central Islip, New York, and having numerous locations for the conducting of business throughout Long Island, New York, and is subject to personal jurisdiction within the Eastern District of New York.

6. Sysco LI is an "employer" covered by the provisions of Title VII, the Equal Pay Act, New York Executive Law and the New York Labor Law.

7. Upon information and belief, the Defendant, Sysco is a corporation existing and created under the laws of the State of Texas, having a principal office for the transaction of business located at 199 Lowell Avenue, Central Islip, New York, and having numerous locations for the conducting of business throughout Long Island, New York, and is subject to personal jurisdiction within the Eastern District of New York.

8. Sysco is an "employer" " covered by the provisions of Title VII, the Equal Pay Act, New York Executive Law and the New York Labor Law.

9. At all material times, Defendant Goffredo was Sysco LI's Vice-President of Sales, and a resident of Suffolk County, New York.

10. At all material times, Defendant Recine was Sysco LI's President, and a resident of Suffolk County, New York.

11. At all material times, Defendant James was Sysco LI's Vice-President of Human Resources, and a resident of Suffolk County, New York.

## BACKGROUND

12. Sysco LI and Sysco are predominantly in the business of distributing food and culinary products (such as paper goods) to healthcare and educational facilities, lodging establishments, restaurants, bars, caterers, country clubs, and cafeterias.

13. The Plaintiff commenced employment with the Defendants, Sysco LI and LI, as joint employers, on or about April 12, 2012, in the position of Marketing Coordinator.

14. As the Defendants' Marketing Coordinator, the Plaintiff's duties included such things as marketing promotions, submissions, approvals, designs, trade shows, product selection and placement, and normal marketing tasks.

15. In or about November 2012, based on the Plaintiff's excellent job performance, the Defendants promoted her to a position of Business Resources, with a direct supervisor of Defendant Goffredo.

16. When the Plaintiff was promoted to a position as Business Resources, she was required to perform the duties that she was performing as Marketing Coordinator, and to perform additionally functions including such things as preparing Business Review point of sale

3

presentations materials, provide support at strategy sessions, prepare Business Review customer information report, and host Business Review together with Chefs.

17. The Plaintiff was advised by Goffredo that individuals who were employed as Chefs were to report to her as a supervisor.

18. From the start of the Plaintiff's employment, the Defendants paid her wages that were substantially less than what the Defendants paid to similarly situated male employees, as well as less than what the Defendant paid to male employees who were employed in positions at a lower level than the position in which she was employed, even certain male employees whom she supervised and who reported to her in their work; she was paid at a rate less than what the Defendants paid to male employees for work on jobs which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

19. During the Plaintiff's employment with the Defendants, the Plaintiff regularly outperformed male co-workers, including with respect to meeting job goals and customer account targets, and in locating and obtaining or opening substantial customers and accounts, and Goffredo cited the Plaintiff's customer sales performance as outstanding (for which Recine at one point described the Plaintiff's job performance as "poetry in motion").

20. In or about August 2015, Goffredo required that the Plaintiff agree to accept a promotion to a position of District Sales Manager against her stated wishes. Goffredo refused to allow the Plaintiff to decline the new assignment because, according to him, the Defendants' male employees who were employed as District Sales Managers were not sufficiently successful as District Sales Managers, and Goffredo believed that women in the industry generally had performed much better than males as District Sales Managers in other companies throughout

the New York metropolitan area; however, the Plaintiff subsequently became aware that after the Defendants transferred her to a position as a District Sales Manager, other similarly situated male employees were paid substantially greater wages than her, even though the Defendants assigned greater job duties to the Plaintiff.

21. In August 2015, Plaintiff informed Goffredo that she was unhappy that she was not being paid at a fair and comparable salary compared to the similarly situated male District Sales Managers employed by the Defendants, but Goffredo failed to do anything to rectify the disparity.

22. Subsequent to informing Goffredo regarding the disparate treatment, as described in "21," above, Goffredo commenced a retaliatory course of conduct against the Plaintiff, including incidents in which he verbally attacked her in a disrespectful manner at meetings (such as a meeting attended by Recine, as well as by other employees, including employees such as Chefs who reported to her). Upon information and belief, Goffredo never engaged in similar conduct against similarly situated male employees.

23. As a result of the verbal attacks described in "22," above, the Plaintiff was caused to suffer humiliation and emotional distress; another employee approached the Plaintiff and advised her that Goffredo was wrong in his conduct towards her, and that Goffredo had engaged in the attack against her in order to protect the male District Sales Managers who were not performing at the level that she was performing.

24. In or about June 2015, the Plaintiff approached Recine and questioned him as to why she had not been given a "Director" job title by the Defendants, as had male employees, even though she was performing the duties of Defendants' "Directors," including the facts that

multiple employees reported to her and the Defendants' "Directors" routinely reached out to her for advice and guidance ; she also became aware that her wages were not at a comparable level as the male employees who held titles as "Directors."

25. In response to her inquiry to Recine as to being afforded a "Director" title, Recine informed the Plaintiff that he was working on "it" and that one of the Defendants' regional officers was "a fan of hers."

26. On or about December 28, 2015, the Defendants finally designated the Plaintiff with a "Director," title, after she had been performing the functions of a "Director" for approximately two years.

27. In or about June 2016, Goffredo ridiculed and harangued the Plaintiff when she indicated that she did not feel comfortable attending a male-dominated golf outing, at which she would be the only woman golfer; Goffredo did not treat other male employees who chose to not attend the golf outing in a similar manner.

28. During the course of her employment with the Defendants, the Plaintiff was the victim of gender stereotyping and disparate treatment, particularly subsequent to her complaints of disparate and unequal wages on the basis of her sex. This included such incidents as:

    a. Being referred as a "mouse" and questioned if she was going to be a "wench" for Halloween;

    b. Being directed to make dinner reservations for a group of employees, despite the fact that such a function was within the job of other, lower level employees and was not demanded of other similarly situated male employees;

c. Being required to serve lunch to a group of employees, even though such a function was a job normally performed by Defendants' Chef employees, who were males;

d. Being referred to as "Witch" by a co-worker, without any repercussion for the offensive sexist language;

e. Being described as "emotional" and "immature" because she wanted to be treated in a manner comparable to similarly situated males.

29. In or about July 2016, Plaintiff was advised that Joe Milazzo, a Meat Salesman in the Defendants' Sales Department, reported to her in accordance with the Defendants' organizational chart; nevertheless, Goffredo advised the Plaintiff that despite the organizational chart, Mr. Milazzo would not report to her because it would be too hard for a woman to supervise Mr. Milazzo.

30. In or about January 2017, after Mr. Milazzo refused to cooperate in providing the Plaintiff with needed information regarding meat sales for customers, a meeting was convened with the Plaintiff, Mr. Milazzo, James, and Goffredo; at the meeting, Mr. Milazzo indicated that he did not want to be in a room with the Plaintiff because he had heard rumors at work that the Plaintiff had filed a sex discrimination complaint against Goffredo.

31. In September 2016, the Plaintiff complained to Goffredo, Recine, and James concerning the fact that she was paid less than similarly situated males.

32. In or about October 2016, the Plaintiff filed a complaint with Defendant James, the Defendants' Director of Human Resources, concerning the disparate treatment and the sexist conduct directed against her by Defendant Goffredo on the basis of her sex, including Goffredo's threats to the Plaintiff that she must attend a male-dominated golf outing.

7

33. Although the Defendants have a policy concerning complaints of sexual harassment and sex discrimination, including a requirement that such complaints be seriously investigated, James failed and refused to satisfactorily investigate the Plaintiff's complaint; upon information and belief, Defendant James advised Defendant Goffredo that the Plaintiff had filed a complaint of sex discrimination against him, but failed to take any satisfactory or reasonable action concerning the Plaintiff's complaint.

34. With respect to the Plaintiff's complaint described in "33," above, in or about December 2016, Defendant James disingenuously indicated to the Plaintiff that, since she had found that Goffredo's threat to the Plaintiff had been "whispered" into her ear, Goffredo's threat to her was not a problem.

35. Subsequent to the Plaintiff's filing of a complaint with James against him, Defendant Goffredo's conduct towards the Plaintiff continued and, in fact, became worse.

36. In or about February 2017, the Plaintiff suffered a serious injury to her foot that required her to hold her foot in an elevated position for periods of time; despite the injury, the Plaintiff continued to report for work and to perform her work in an outstanding manner.

37. The Plaintiff advised Defendant Goffredo that her physician's medical instructions concerning her foot injury was that she spend time at home icing and elevating her foot, but Defendant Goffredo refused to allow the Plaintiff to do so, insisting that she ice and elevate her foot at her desk at work.

38. The refusal described by Defendant Goffredo, in "37," above, is disparate treatment as compared to similarly situated male employees, including a male employee who was allowed to leave work early to rest from a hernia operation.

39. On or about March 25, 2017, the Plaintiff filed a request, in accordance with the Defendants' company policy, to take a bereavement leave of absence of six days in May 2017 to attend to the burial of a parent which could not take place until the cemetery burial plot was sufficiently thawed for burial.

40. Defendants Goffredo and Recine failed to promptly and timely approve the Plaintiff's March 25, 2017 leave of absence request, even though requests for leaves of absence made by similarly situated male employees were routinely and promptly granted in a timely manner.

41. On or about May 22, 2017, the Defendants failed to include the Plaintiff in an important meeting, the "Northeast Regional President's Meeting," even though a similarly situated male was included and the meeting was important in assisting the Plaintiff to perform her job and meet targeted goals.

42. On or about May 24, 2017, a Corporate Senior Analyst of Defendant Sysco recognized the high third place ranking of the Defendants' Central Islip location, in part based upon the Plaintiff's outstanding job performance and her continued communication with the corporate office.

43. On or about May 25, 2017, the Defendants terminated the Plaintiff's employment, notwithstanding the facts that she always performed her job in an outstanding manner and consistently met or exceeded her goals and targets.

44. The Defendants' termination of the Plaintiff's employment was despite the fact that the Plaintiff was held in high regard by the Defendants' customers, including Chef Robert Anthony of Lombardy's, Chef Chris of Oldfield Club, Tracy Cullen of King Kullen, East Hampton

Tennis Club, Citi Field Chefs, Montauk Yacht Club, and the industry-wide broker community; upon information and belief, the Defendants' customers with whom the Plaintiff dealt will fully substantiate her outstanding performance in handling their accounts.

45. By reason of the foregoing, the Defendants caused the Plaintiff to be exposed to a hostile work environment, causing the Plaintiff to suffer extreme emotional distress.

46. By reason of the foregoing, the Plaintiff was caused to suffer a loss in pay and benefits, and other emoluments of her employment.

47. By reason of the foregoing, the Plaintiff was caused to suffer extreme and severe emotional distress.

48. The above-described disparate pay, discharge and mistreatment of the Plaintiff by the Defendants was on the basis of her sex and in retaliation for the Plaintiff's complaints of sex discrimination and disparate treatment, including the Defendants' failure to pay her wages equal to those paid to similarly situated male employees.

## FIRST CAUSE OF ACTION

49. The Defendants discriminated against the Plaintiff on the basis of her sex in violation of Title VII.

50. The Defendants retaliated against the Plaintiff by reason of her complaints of sex discrimination, and such retaliation was willful on the part of the Defendants.

51. By reason of the foregoing, the Defendants are liable to the Plaintiff for damages.

52. As a proximate result of the Defendants' discrimination and retaliation against the Plaintiff, the Plaintiff has suffered, and continues to suffer, loss of past and future earnings, all to Plaintiff's damage in an amount to be determined at trial.

53. As a further proximate result of the Defendants' discrimination and retaliation against the Plaintiff, Plaintiff has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, anguish, and emotional distress, all to Plaintiff's damage in an amount to be determined at trial.

54. The Defendants' conduct was carried out in conscious disregard of the Plaintiff's rights, thereby entitling the Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

55. The Defendants' discriminated against the Plaintiff on the basis of her sex in violation of the New York Human Rights Law.

56. The Defendants' retaliated against the Plaintiff by reason of her complaints of sex discrimination, and such discrimination was willful.

57. By reason of the foregoing, the Defendants are liable to the Plaintiff for damages.

58. As a proximate result of the Defendants' discrimination and retaliation against the Plaintiff, the Plaintiff has suffered, and continues to suffer, loss of past and future earnings, all to Plaintiff's damage in an amount to be determined at trial.

59. As a further proximate result of the Defendants' discrimination and retaliation against the Plaintiff, Plaintiff has suffered, and continues to suffer, severe and lasting

embarrassment, humiliation, anguish, and emotional distress, all to Plaintiff's damage in an amount to be determined at trial.

60. The Defendants' conduct was carried out in conscious disregard of the Plaintiff's rights, thereby entitling the Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION

61. The Defendants discriminated against the Plaintiff by paying her wages at a rate less than the rate at which they pay to male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, in violation of the Equal Pay Act, and such discrimination was willful.

62. By reason of the foregoing, the Defendants are liable to the Plaintiff, in a sum to be determined at trial, for the difference in wages that she was paid as compared to the male employees who were paid higher wages for equal work.

### FOURTH CAUSE OF ACTION

63. The Defendants discriminated against the Plaintiff by paying her wages at a rate less than the rate at which they pay to male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, in violation of section 198 of the New York Labor Law, and such discrimination was willful.

64. By reason of the foregoing, the Defendants are liable to the Plaintiff, in a sum to be determined at trial, for the difference in wages that she was paid as compared to the male employees who were paid higher wages for equal work.

## FIFTH CAUSE OF ACTION
### (Against Defendants Goffredo, Recine, and James)

65. New York Executive section 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so.

66. Defendants Goffredo, Recine, and James each participated in the decisions to discriminate against the Plaintiff with regards to her wages, to terminate the Plaintiff's employment on the basis of her sex and in retaliation for her complaints of disparate treatment.

67. Defendants Goffredo, Recine, and James wither created a hostile work environment, or failed to rectify the hostile work environment, created for the Plaintiff.

68. Defendants Goffredo, Recine, and James violated New York Executive Law section 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct alleged herein.

WHEREFORE, the Plaintiff demands the following relief against the Defendant:

A. Reinstatement to employment with full backpay, compensatory damages, and restoration of all benefits of employment;

B. Damages in the sum of One Million ($1,000,000.00) Dollars in compensation for emotional distress;

C. Punitive damages;

D. Damages in a sum representing the failure to pay equal pay compared to the wages paid to male employees for equal work;

E. Damages in a sum representing disparate wages paid to the Plaintiff, as compared to the wages paid to male employees;

F. Liquidated damages as a result of Defendants' willful conduct

G. Attorneys' fees, costs, disbursements, and interest.

Dated: Smithtown, New York
March 9, 2018

Paul L. Dashefsky
Attorney for Plaintiff
317 Middle Country Rd.
Smithtown, New York 11787
(631) 361-7981